**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CENTRAL LABORERS' PENSION FUND,      )
CENTRAL LABORERS' ANNUITY FUND, and  )
CENTRAL LABORERS' WELFARE FUND,     )
                                 )
           Plaintiff(s),         )
    v.                       )    **26-Cv-07605**
                                 )
PERFORMANCE PIPELINING, INC.,      )
an Illinois corporation,             )
                                 )
           Defendant(s).     )

## COMPLAINT

Plaintiffs Central Laborers' Pension Fund, Central Laborers' Annuity Fund, and Central Laborers' Welfare Fund (collectively "Plaintiff Funds"), by their attorneys, complain against Defendant PERFORMANCE PIPELINING, INC. as follows:

## COUNT I
against
PERFORMANCE PIPELINING, INC.
(*Claim under ERISA for payroll compliance audit*)

1. This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132, 1145 ("ERISA"); the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a) ("LMRA"); 28 U.S.C. § 1331; and federal common law.

2. Plaintiff Funds are multiemployer pension funds and welfare funds established pursuant to collective bargaining agreements between, on the one hand, the Laborers International Union of North America (the "Union") and local unions and district councils affiliated with the Union, and, on the other hand, specific employers and employer associations. The Union and its affiliated local unions and district councils are labor organizations within the meaning of the LMRA, 29 U.S.C.

§ 152(5), representing employees in an industry affecting commerce as defined by the LMRA, 29 U.S.C. § 185(a).

3. Plaintiff Funds receive fringe benefit contributions and dues payments from certain employers pursuant to collective bargaining agreements between, on the one hand, the Union and district councils and local unions affiliated with the Union, and, on the other hand, certain employer associations and employers, all on behalf of employees covered by the collective bargaining agreements. The Plaintiff Funds' right to receive fringe benefit contributions and dues payments also arises pursuant to participation agreements between the Plaintiff Funds and employers.

4. Plaintiff Central Laborers' Pension Fund is the authorized collection agent for the other Plaintiff Funds (and other affiliated funds) with respect to the collection of fringe benefit contributions.

5. PERFORMANCE PIPELINING, INC. is an Illinois corporation doing business in (and with its principal place of business in) the Northern District of Illinois. Venue in this district is proper under ERISA, 29 U.S.C. § 1132(e)(2); and 28 U.S.C. § 1391(b). PERFORMANCE PIPELINING, INC. is an "employer" and a "party-in-interest" as those terms are defined by, respectively, Sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

6. PERFORMANCE PIPELINING, INC. became a party to and bound by collective bargaining agreements with the Union (and/or one or more district councils and local unions affiliated with the Union) by virtue of its execution of one or more collective bargaining agreements. No party has terminated the collective bargaining agreements and they remain in effect. Copies of signature pages of such collective bargaining agreements are attached as *Exhibit A*.

7. By virtue of certain provisions contained in the collective bargaining agreement(s), PERFORMANCE PIPELINING, INC. became a party to and bound by the Plaintiff Funds' trust agreements.

8. PERFORMANCE PIPELINING, INC. became a party to and bound by one or more participation agreements with the Plaintiff Funds. No party has terminated the participation agreements and they remain in effect. Copies of signature pages of such participation agreements are attached as *Exhibit B*.

9. By virtue of certain provisions contained in the participation agreement(s), PERFORMANCE PIPELINING, INC. became a party to and bound by the Plaintiff Funds' trust agreements.

10. PERFORMANCE PIPELINING, INC. became a party to and bound by the collective bargaining agreements, participation agreements, and trust agreements by virtue of its signing and submitting (and certain provisions contained in) employer contribution report forms to the Plaintiff Funds.

11. PERFORMANCE PIPELINING, INC. became a party to and bound by the collective bargaining agreements, participation agreements, and trust agreements by virtue of its withholding of (some but not all) payroll deductions and dues consistent with the collective bargaining agreements, participation agreements, and trust agreements.

12. PERFORMANCE PIPELINING, INC. became a party to and bound by the collective bargaining agreements, participation agreements, and trust agreements by making (some but not all) employee fringe benefit contributions and dues payments to the Plaintiff Funds.

13. Under the terms of the collective bargaining agreements, participation agreements, and trust agreements, PERFORMANCE PIPELINING, INC. is required to make fringe benefit contributions and dues payments to the Plaintiff Funds on behalf of employees performing work covered by the collective bargaining agreement; the contributions and dues are required to be paid at the hourly rates indicated in the collective bargaining agreement and participation agreements. Under the terms of the agreements, PERFORMANCE PIPELINING, INC. is also required to submit

monthly remittance reports identifying, among other things, the employees covered under the collective bargaining agreement and the amount of contributions and dues to be remitted on behalf of each covered employee.

14. Pursuant to the collective bargaining agreements, participation agreements, trust agreements, ERISA, and federal common law, PERFORMANCE PIPELINING, INC. is required to provide access to such records as are necessary for Plaintiff Funds to determine whether there has been compliance with obligations to contribute to Plaintiff Funds.

15. Upon information and belief, PERFORMANCE PIPELINING, INC. has failed to make some of the contributions from time to time required to be paid by it to the Plaintiff Funds pursuant to the terms of the collective bargaining agreements, participation agreements, and trust agreements to which it is bound, all in violation of its contractual and statutory obligations.

16. PERFORMANCE PIPELINING, INC. has failed and refused to provide access to such records as are necessary for the Plaintiff Funds to determine whether there has been compliance with obligations to contribute to the Plaintiff Funds.

17. Plaintiffs have been required to employ the undersigned attorneys and auditors to compel the payroll compliance audit of the books and records of PERFORMANCE PIPELINING, INC.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment against PERFORMANCE PIPELINING, INC. in favor of Plaintiffs.

B. Order PERFORMANCE PIPELINING, INC. to provide access to its records so that a payroll compliance audit can be performed to determine whether it has complied with fringe benefit contribution requirements.

C. Order PERFORMANCE PIPELINING, INC. to pay all fringe benefit contributions and assessment penalties that may be shown to be due after a payroll compliance audit.

4

D.      Order PERFORMANCE PIPELINING, INC.  to pay auditors' fees to Plaintiffs.

E.      Order PERFORMANCE PIPELINING, INC.  to pay interest, costs, and reasonable attorneys' fees to Plaintiffs pursuant to 29 U.S.C. § 1132(g)(2).

F.      Order PERFORMANCE PIPELINING, INC. to perform and continue to perform all other obligations it has undertaken with respect to Plaintiffs.

G.      Grant Plaintiffs such other and further relief as may be just.

Respectfully submitted,

CENTRAL LABORERS' PENSION FUND,
CENTRAL LABORERS' ANNUITY FUND, and
CENTRAL LABORERS' WELFARE FUND, and

By:    /s/ *Richard A. Toth*
One of their attorneys

GEORGES & SYNOWIECKI, LTD.
20 S. Clark St., Suite 400
Chicago, IL  60603-1903
(312) 726-8797

5

14301

By Signing this Memorandum of Agreement which has been negotiated by and between the Associated General Contractors of Illinois and The Laborers' International Union of North America, The Downstate Illinois Laborers' District Council and Laborers' Local 477 (Springfield), the undersigned Employer agrees to abide by all the Articles, stipulations and fringe benefits contained herein throughout the Counties covered by Laborers' Local 477.

**FOR THE COMPANY:**

Company Name: _Performance Pipelining INC_

Company Address: _1551 W. Norris Dr_

City, State, Zip: _Ottawa IL 61350_

Phone Number: _815-433-0080_ Fax Number: _____

Email Address: _Patrickgrieves@yahoo.com_

Signed By: _____ Date: _9-10-24_

Printed Name and Title: _Patrick Grieves Project Manager_

**FOR THE UNION:**

Downstate Illinois Laborers' District Council

_____
(Glyn Ramage, Business Manager)

_____
(Witnessing Union Agent and Title)

Date: _8-31-2023_ Local Union Number: _477_



RECEIVED
SEP 10 2024

EXHIBIT
**A**

# CENTRAL LABORERS' PENSION, WELFARE & ANNUITY FUNDS

## CONSTRUCTION INDUSTRY PARTICIPATION AGREEMENT

1. **Detailed Written Agreement.** This Participation Agreement (hereinafter "Agreement") is entered into between the undersigned employer (hereinafter "Employer") and the Central Laborers' Pension, Welfare and Annuity Funds and such other employee benefit funds, labor-management funds, labor organizations or other funds referenced herein or in the applicable collective bargaining agreements for which the Central Laborers' Pension, Welfare and Annuity Funds act as the collection agent (hereinafter collectively "Funds"). The Employer hereby agrees that this document represents the detailed written agreement required by the Labor Management Relations Act (29 U.S.C. Section 186 (c)) to permit the Funds to receive contributions from the Employer.

2. **Trust Agreements.** The Employer hereby agrees to be bound by each of the Funds' Agreement and Declaration of Trust, as amended, or such other governing document establishing the Funds, as amended (hereinafter "Trust Agreements"), as though the Employer had actually signed the same.

3. **Collective Bargaining Agreements.** The Employer hereby agrees and acknowledges that it is a party to and is bound by the written "area-wide" collective bargaining agreement(s) (hereinafter "CBA" or "CBAs") that are covered by the scope of this Agreement as described in Section 4(a) through (c) of this Agreement. The Employer agrees and acknowledges that it shall remit contributions to the Funds for each hour worked by the employees of the Employer who are performing work covered by and within the scope and geographic area of each CBA for the duration of each such CBA. The Employer further agrees that it is bound by any amendments, renewals or extensions of such CBAs that are agreed to by the Employer Associations, if applicable, and Local Union or District Council signatory thereto or which otherwise become effective. Each CBA covered by the scope of this Agreement as described in Section 4(a) through (c) of this Agreement is incorporated herein as if fully set forth herein.

4. **Scope of Participation Agreement.** Unless otherwise specifically agreed to, in writing, by the Funds, this Agreement obligates the Employer to:

    (a). Remit contributions to the Funds for each hour worked by the employees of the Employer who are performing work covered by and within the scope and geographic area of a CBA which the Employer has executed and which requires the Employer's participation in the Funds;

    (b). Remit contributions to the Funds for each hour worked by the employees of the Employer who are performing work covered by and within the scope and geographic area of a CBA which the Employer has not executed but under which the Employer is (or, if applicable, has been) remitting contributions to the Funds; and

    (c). Remit contributions to the Funds for each hour worked by the employees of the Employer who are performing work covered by and within the scope and geographic area of the applicable CBA which is in effect in the jurisdiction of the Local Union that has executed this Agreement and which requires the Employer's participation in the Funds;

5. **Contributions.** The Employer agrees to make contributions or other payments to the Funds on behalf of all employees, as defined in the Trust Agreements and applicable CBA's, who are performing work covered by and within the scope and geographic area of the applicable CBA's for the duration of the CBA's, and any amendments, renewals or extensions thereof.

    For the purposes of this Agreement, the phrase "each hour worked" shall mean each hour worked for which the Employee receives pay, and other hours for which pay is received by the Employee in accordance with this and/or any applicable agreements, shall be counted as hours for which contributions are payable.

6. **Contribution Rates.** Unless the Employer provides the Funds with a separate written agreement or addendum specifying the applicable contribution rates signed by the Employer and the applicable Local Union or District Council and which is specifically approved by the Funds, the Employer hereby agrees to pay contributions to the Funds in the amounts set forth in the applicable CBA or wage addendum to the applicable CBA that is in effect and which applies to the time period for which the hours were worked by the Employer's employees. It is expressly understood and agreed that the contribution rates may change or vary with the geographical location of the Employer's jobs or that the rates may increase and/or decrease from time to time pursuant to the Trust Agreements or applicable CBAs.

7. **Rehabilitation Plan.** Unless the applicable Local Union and/or District Council and the Employer execute a separate schedule to the Pension Fund's Rehabilitation Plan (and provide the same to the Pension Fund), the Employer hereby agrees that it is a signatory to the applicable schedule to the Pension Fund's Rehabilitation Plan that was adopted by the Local Union and/or District Council and Employer Association who are the negotiating parties to the applicable CBA to which the Employer is a signatory and which CBA governs the type of work performed by the employees of the Employer for which the Employer is remitting contributions to the Funds; provided however, the Employer must have remitted the contribution rates that are linked to and which correlate to such schedule (e.g., payment of the "Preferred Schedule" rates results in the Employer adopting the "Preferred Schedule"). The Employer agrees to be bound by such schedule for the duration of the applicable CBA. Unless the Employer and applicable Local Union and District Council otherwise agree (and provide written notice of the same to the Pension Fund), the Employer also agrees and acknowledges that the Employer shall be subject to the applicable schedule to the Pension Fund's Rehabilitation Plan that is linked to and which correlates with the contribution rates paid by the Employer for all hours for which the Pension Fund has not received a separate signed schedule to the Rehabilitation Plan on file from the Employer.

8. **Reporting Obligations.** The Employer agrees to make and report the required contributions monthly and in such manner as required by the Funds for all employees as defined in the Trust Agreements and applicable CBA's. As specified in the Trust Agreements, the Funds shall have the authority to have their designee review and examine all payroll and all wage, job, bonds and other relevant records of the Employer upon reasonable notice for the purpose of determining the accuracy of the Employer's contributions to the Funds.

9. **Compliance with Agreement.** If an Employer fails to pay contributions as required by the Trust Agreements and this Agreement, the Funds shall have the right to take necessary steps to secure compliance with this Agreement and the Trust Agreements, any other p[...]

Revised January ___, 2015.

EXHIBIT

**B**



the contrary notwithstanding, and the Employer shall be liable for all reasonable costs of collection of the payments due together with reasonable attorney's fees and such other reasonable costs and charges as may be assessed by the Funds pursuant to the Trust Agreements and the applicable policies adopted by the Funds, including the cost of any and all payroll examinations. In addition, the Employer agrees that all remittances not received by the 15th day of the month next following the month for which the contributions and other payments are due are subject to assessment of liquidated damages in the amount of 10% of the contributions and other payments or $25.00 minimum per remittance, to defray the increased administrative costs resulting from late payments.

10. **Designated Trustees.** The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the Funds such Trustees as are now serving, or their successors who will serve in the future, as Employer Trustees together with their successors. The Employer further agrees to be bound by all actions taken by the governing bodies of the Funds pursuant to the Trust Agreements as heretofore and/or hereafter amended.

11. **Tax Status.** It is agreed that the Funds which accept contributions that are a deduction for income tax purposes shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions as a deduction for income tax purposes.

12. **Copies of CBA's.** The Employer and/or Local Union/District Council agrees that it shall, upon request of the Funds, provide a signed copy of all CBA's to the Funds to which the Employer is a signatory.

13. **Effective Date.** Unless otherwise specifically agreed to by the Employer and Funds, this Agreement shall remain in effect until terminated. This Agreement shall be terminated in the same manner and subject to the same requirements as each CBA incorporated herein; however, in order for termination of this Agreement to coincide with termination of any CBA incorporated herein, the Employer must timely provide a separate written notice of termination to the Funds that satisfies the requirements of the applicable CBA. This Agreement will be deemed terminated, *in toto*, when a timely required notice has been provided by the Employer with respect to each CBA incorporated herein and the term of each CBA incorporated herein has expired without the CBA being renewed or otherwise extended.

14. **Necessary Authority.** The Employer and the Employer's agent signing on behalf of the Employer represent and warrant that: (a) the Employer's agent identified below has full power and authority to execute and deliver this Agreement; (b) this Agreement has been duly authorized, executed and delivered on behalf of the Employer; and (c) this Agreement constitutes a legal, valid and binding obligation of the parties hereto which is enforceable against the parties in accordance with its terms.

NO ALTERATIONS OR ADDITIONS TO THIS PARTICIPATION AGREEMENT SHALL BE EFFECTIVE UNLESS APPROVED IN WRITING BY THE TRUSTEES OF THE FUND. TO THE EXTENT THERE EXISTS ANY CONFLICT BETWEEN PROVISIONS OF THIS PARTICIPATION AGREEMENT AND ANY PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT, THE PARTICIPATION AGREEMENT SHALL CONTROL.

| EMPLOYER | CENTRAL LABORERS' FUNDS |
|---|---|
| Performance Pipelining INC | _Kevin W. Day_ |
| Name of Business | Authorized Signature |
| 1551 W. Norris Dr | Executive Director |
| Address | Title |
| Ottawa IL 61350 | |
| City/State/Zip Code | LOCAL UNION |
| 815-433-0080 | Territory in which Agreement signed: Local 477 |
| Telephone | |
| _(signature)_ | Authorized Signature |
| Authorized Signature | Business manager |
| Project Manager | Title |
| Title | 9-10-24 |
| 9-10-24 | Date |
| Date | |



RECEIVED
SEP 10 2024

Revised January _____, 2015.